IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RAMIN BIBIAN,<br><br>  Defendant.<br>_____/ | No. CR 12-0617 RS<br><br>**ORDER DENYING MOTION TO STRIKE OR REFORM PLEA AGREEMENT STIPULATION** |

## I.   INTRODUCTION

On December 18, 2012, Ramin Bibian pled guilty to one count of a transfer of false identification documents in violation of 18 U.S.C. § 1028. As part of that plea agreement, Bibian and the government entered a stipulation that, among other things, indicated a specific range of criminal earnings. Elsewhere in the document, the amount of criminal earnings was stated at a single amount at the high end of the previously-stated range, for the purpose of forfeiture. Having not yet been sentenced, Bibian now moves either to strike or to reform the later reference to criminal earnings subject to forfeiture. For the reasons discussed below, the motion is denied.

## II.   BACKGROUND

In August 2012, Bibian was charged by indictment with three counts of a transfer of false identification documents (18 U.S.C. § 1028) as well as a forfeiture allegation (18 U.S.C.

§§ 982(a)(2)(B) and 1028(b)(5)).  Bibian pled guilty to a single count of the transfer of false identification documents on December 18, 2012.

As part of that plea agreement, Bibian and the government entered into a stipulation that, among other things, addressed the amount of money earned by Bibian as a result of his criminal activity.  Paragraph two of the filed stipulation provides in relevant part:

> I earned more than $1,000,00 [sic] from the sale of "international driver's licenses," false state driver's licenses, and false state identification documents and I understand that the government will argue that I earned $1.9 million from such sales."

The parties agree that the first sentence contains a typo; the correct range of stipulated criminal earning is between $1 million and $1.9 million.

While paragraph two provides a range of criminal earnings, the stipulation regarding forfeiture in paragraph eleven states a specific dollar amount:

> I admit that I earned $1,900,000 as the result of my criminal activity, discussed above, and the amount I earned is proceeds from the crime to which I am pleading guilty.  I consent to a forfeiture money judgment of $1,900,000 (the "Forfeiture Money Judgment"), as stipulated or ordered in a preliminary order of forfeiture.

At the time he entered his plea, Bibian was assisted by his retained counsel, David Kettel. According to Kettel,

> The most vigorously negotiated provisions of that plea agreement were the factual basis in paragraph two and the forfeiture admission in paragraph eleven, both addressing the amount of money allegedly earned by Mr. Bibian as a result of his criminal activity.  During the course of the negotiations on these provisions, the parties sometimes proposed a specific dollar amount as being earned by Mr. Bibian and at other times proposed a range of dollar amounts.

(Declaration of David Kettel in Support of Defendant's Motion, ¶ 2.)  In fact, the final stipulation filed with the court includes an interlineation as to the upper range of Bibian's criminal earnings, with the original amount of "$2,210,642.39" crossed out and replaced with $1.9 million."  (Plea Agr., ¶ 2.)

During his plea colloquy, Bibian affirmed that he had had an opportunity to review the plea agreement and to discuss it with his counsel.  (Tr. 5.)  The record also reflects that he took time to read the agreement in court.  (Tr. 2. ("Defendant examines document.").)  He also affirmed that he had reviewed the provisions regarding forfeiture.  (Tr. 8.)

At the same time, counsel for both sides referenced recent changes to the agreement. For example, the following exchange took place before Bibian entered the courtroom:

> [MR. KETTEL]: Your Honor, the parties have reached an agreement which requires some minor revisions to the version that Your Honor has.
>
> THE COURT: Okay.
>
> MR. KETTEL: And when my client comes in, he will need to read through it one more time.

(Tr. 2.) As noted above, Bibian did just that. In addition, the following exchange took place with the Assistant U.S. Attorney at the close of the hearing:

> MS. KNIGHT: No objection, Your Honor. And I have one amendment to Paragraph 18, if I can —
>
> THE COURT: Okay.
>
> MS. KNIGHT: — put that — I apologize. We've had several versions, *we were working on the forfeiture* this afternoon. Paragraph 18 should read that "The Government agrees to recommend the guideline calculations set out above as well as the low end of the applicable guideline range unless the Defendant violates the terms of the agreement above or fails to accept responsibility."
>
> THE COURT: Is that an amendment? Looks like you just read what was in the agreement.
>
> MS. KNIGHT: The low end — it should be — it should state specifically, the Government agrees to recommend the low end.
>
> THE COURT: That's what my — mine says.
>
> MS. KNIGHT: Okay. I just want to make sure that it was clear. Thank Your Honor.

(Tr. 17–18 (emphasis added).) The government has introduced several exhibits concerning these changes, including last minute changes to paragraph eleven. (*See, e.g.*, Response, Ex. 1 (Knight Decl.); Ex. 3, 6, 8 (email exchange between defense counsel and AUSA); Ex. 7 (email exchange between AUSAs regarding final changes to plea agreement).)

At some point after Bibian entered his plea of guilty, he discovered the claimed inconsistency and relieved Kettel of his representation. (Declaration of Daniel Blank [hereinafter "Blank Decl."], ¶ 9.) Bibian's substitute counsel, appointed by the court, sought to resolve the

1 problem through a proposed stipulation with the government, which declined to agree. (*Id.*; *see also*
2 *id.*, Ex. B, at 1 (Letter from Susan Knight, Assistant United States Attorney (Sept. 17, 2013).)

3 Bibian now seeks to strike or, in the alternative to reform as mutual mistake, what he calls
4 "an invalid stipulation" in paragraph eleven of the plea agreement. According to Bibian, he did not
5 knowingly enter into the stipulation in paragraph eleven. He does not, however, seek to withdraw
6 his plea of guilty. *Cf.* Fed. R. Crim. P. 11(d)(2).

### III. DISCUSSION

"Our analysis begins with the fundamental rule that '[p]lea agreements are contractual in nature and are measured by contract law standards.'" *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) (quoting *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993)). "If the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning. If, however, a term of a plea agreement is not clear on its face, we look to the facts of the case to determine what the parties reasonably understood to be the terms of the agreement. If, after we have examined the extrinsic evidence, we still find ambiguity regarding what the parties reasonably understood to be the terms of the agreement, then the government 'ordinarily must bear responsibility for any lack of clarity.'" *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) (quoting *De la Fuente*, 8 F.3d at 1337)).

As an initial matter, there is a serious question as to whether this court, or any court, has the authority to grant the relief Bibian seeks. He explicitly does not seek to vacate his plea agreement. *Cf.* Fed. R. Crim. P. 11(d). Nor does he seek to resolve a typographical or drafting error obvious on its face. *Cf. United States v. Anglin* 215 F.3d 1064 (2000) (discussed below). Instead, Bibian asks the court to amend substantively the terms of his plea agreement against the government's wishes. This proposed remedy would seem to violate the express prohibition against judicial involvement in plea discussions (*see* Fed. R. Crim. P. 11(c)(1)) and to raise the specter of "blending of judicial and prosecutorial functions." *United States v. Davila*, 133 S.Ct. 2138, 2149 (June 13, 2013).

Even setting aside this prohibition on judicial involvement in plea bargaining, the facts here do not support Bibian's request for relief as the terms of the agreement are neither ambiguous nor necessarily inconsistent. What the Ninth Circuit observed in *United States v. Anglin* applies equally

here: "[T]his is not the run-of-the mill case in which a plea agreement incorporates ambiguous words." *Anglin*, 215 F.3d at 1067.

In *Anglin*, the defendant entered a plea agreement that in one paragraph specifically waived her appellate rights, with a single exception to appeal any upward departure in her sentence, while boilerplate language in the very next paragraph stated "The Defendant also retains the right to appeal under Section 3742 the court's determination." *Anglin*, 215 F.3d at 1066. The meaning of the terms was clearly inconsistent, a problem the Ninth Circuit remedied by excising the general boilerplate language in favor of the more specific provisions negotiated by the parties:

> Our examination of section 13 and Anglin's plea hearing reveals a carefully negotiated waiver of appellate rights. After spelling out the boundaries of this waiver in the early portions of section 13, the government simply failed to follow its usual practice and delete the boilerplate contents of subparagraph "c." We agree with the government that in context the subparagraph reads like an introductory phrase without any grounds for appeal set out or reserved. It is clearly and explicitly inconsistent with the well-developed waiver embodied in the three prior paragraphs. Its presence in the agreement was clearly a mistake.

*Anglin*, 215 F.3d at 1067.

As in *Anglin*, the meaning of the plea agreement's terms in paragraphs two and eleven is clear, and Bibian does not argue otherwise. Instead, he offers extrinsic evidence, including his own declaration and prior versions of the agreement, to show that he cannot have meant to agree to the forfeiture terms in paragraph eleven. Such evidence is of no moment: "If the terms of the plea agreement on their face have a clear and unambiguous meaning, then this court will not look to extrinsic evidence to determine their meaning." *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000).

Moreover, unlike in *Anglin*, the terms of Bibian's agreement are not necessarily inconsistent. Paragraphs 2 and 11 of Bibian's plea agreement concern two different matters: the amount of criminal earnings relevant to calculate sentencing, on the one hand, and the stipulated amount subject to forfeiture, on the other. Nor can either paragraph be dismissed as boilerplate verbiage. The interlineation in paragraph two of the filed plea agreement, as well the government's comments during the hearing, demonstrate these were both carefully negotiated provisions. Additional evidence from both parties further demonstrates the ongoing negotiations concerning the terms of

paragraphs two and eleven. (See, e.g., Response, Ex. 1 (Knight Decl.); Ex. 3, 6, 8 (email exchange between defense counsel and AUSA); Ex. 7 (email exchange between AUSAs regarding final changes to plea agreement).) Nor can any discrepancy be reduced to "mutual mistake." In fact, the government has plausibly argued the change to paragraph 11 was made at defendant's behest and for his benefit:

> In paragraph two, for purposes of the Sentencing Guidelines, Mr. Bibian admitted that he "*earned more than* $1,000,00 from the sale of 'international driver's licenses, false state driver's licenses, and false state identification documents." He also admitted that he understood that the government could provide a higher loss, specifically, $1.9 million dollars. . . . In paragraph 11 of the agreement, Mr. Bibian agreed to a money judgment of $1.9 million dollars. We recall discussing this issue at length with his attorneys. More importantly, Mr. Bibian significantly benefitted by agreeing to an exact dollar figure because the government reduced the money judgment by $300,000.

(Blank Decl., Ex. B, at 1 (Letter from Susan Knight, Assistant United States Attorney (Sept. 17, 2013).)

In sum, the language of the plea agreement is clear, and any inconsistency between paragraph two and paragraph eleven flows apparently from careful negotiation between defendant and the government. Bibian has failed to show either a factual or legal basis to impose his requested change on this agreement entered knowingly and voluntarily between himself and the government.

## IV.   CONCLUSION

Defendant's motion is denied.

IT IS SO ORDERED.

Dated: December 16, 2013

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE